NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1281, -1282

THE REGENTS OF THE UNIVERSITY OF NEW MEXICO,

Plaintiff-Appellee,

v.

GALEN D. KNIGHT,

Defendant-Appellant,

and

TERENCE J. SCALLEN,

Defendant-Appellant.

_____

DECIDED:  November 9, 2004

_____

Before LOURIE, SCHALL, and LINN, <u>Circuit Judges</u>.

LINN, <u>Circuit Judge</u>.

Terence J. Scallen ("Scallen") and Galen D. Knight ("Knight") separately appeal from a final judgment dismissing all of their counterclaims against the Regents of the University of New Mexico ("the University").  <u>Regents of the Univ. of N.M. v. Knight</u>, No. CIV 99-577 (D.N.M. Jan. 8, 2004).  Because Scallen and Knight's arguments are without merit, we <u>affirm</u>.

BACKGROUND

The present appeals stem from a lawsuit filed by the University against Scallen and Knight seeking a declaration of ownership of various patents and applications related to beta-alethine compounds and vitaletheine modulators as well as asserting breach of contract and interference with contractual relations claims. In response, Scallen and Knight asserted various counterclaims against the University seeking determinations of their rights in the inventions and asserting various other contract and tort claims. The United States District Court for the District of New Mexico ("district court") originally determined that the University was the owner of all patents and applications at issue, that Scallen and Knight breached their contractual obligation to assign the patents to the University, and that Scallen and Knight's counterclaims were barred by the Eleventh Amendment.

On appeal, this court affirmed the district court's judgment that the University was the owner of the patents and applications at issue and that Scallen and Knight breached their obligation to assign the inventions to the University. Regents of the Univ. of N.M. v. Knight, 321 F.3d 1111 (Fed. Cir. 2003). However, this court also held that the district court's dismissal of Scallen and Knight's counterclaims based on Eleventh Amendment immunity was error. We held that by suing in federal court, the University had waived its Eleventh Amendment immunity with respect to all compulsory counterclaims asserted by Scallen and Knight. Id. at 1124-26. In evaluating Scallen and Knight's counterclaims, we held that Knight's counterclaim for royalties was compulsory; however, we were unable to discern which of the remaining counterclaims were compulsory. Thus, we vacated the district court's dismissal of the remaining

counterclaims and remanded stating, "Scallen and Knight are admonished, however, to be precise in indicating to the district court how they were damaged by actions or inactions arising from the same transactions. None of the above should preclude the district court from dismissing any counterclaims on proper grounds other than the Eleventh Amendment." Id. at 1126.

On remand, Scallen and Knight attempted to amend their counterclaims, but the district court denied their motions to amend. Regents of the Univ. of N.M. v. Knight, CIV 99-577, slip op. at 3-4 (June 18, 2003) (Mem. Op. & Order). The district court then dismissed all of Scallen and Knight's counterclaims, other than Knight's claim for royalties. The district court determined that Knight's counterclaims for intentional interference with prospective economic advantage and malicious abuse of process were not compulsory and should be dismissed. Id. at 6-7. The district court also held that Scallen's counterclaim for breach of the duties of care, good faith, and fair dealing based upon the University entering into a faulty license agreement, filing certain documents with the Patent and Trademark Office, and attempting to harm Scallen's professional reputation was compulsory. Id. at 9-10. Nevertheless, the district court concluded that these claims, although compulsory, were barred by the applicable statutes of limitations and by the New Mexico Tort Claims Act. Id. at 10-12. The district court subsequently granted summary judgment in favor of the University on Knight's remaining counterclaim for royalties. Regents of the Univ. of N.M. v. Knight, CIV 99-577 (Jan. 8, 2004) (Mem. Op. & Order). On the same day, the district court entered final judgment in favor of the University on all claims and awarded costs to the University,

including the costs of a special master in the amount of $63,887.33. <u>Regents of the Univ. of N.M. v. Knight</u>, CIV 99-577 (Jan. 8, 2004) (Final Order).

Scallen and Knight separately appeal the district court's various decisions. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Scallen and Knight each raise different issues on appeal. Therefore, their arguments will be addressed separately.

### A. Scallen's Arguments

Scallen first contends that the district court abused its discretion in failing to allow him to amend his counterclaims. In particular, Scallen argues that the district court's dismissal of his third motion to amend, filed after remand from this court, was an abuse of discretion. Scallen argues that the dismissal for untimeliness was improper because this court's remand effectively "turned the clock back to May 16, 2000, the date Scallen filed his <u>second</u> motion to amend." The University responds that Scallen's motion to amend was properly denied because he sought to file new counterclaims that were barred under the mandate rule and that untimeliness is a proper basis for denial of motions to amend after the close of discovery. We agree that Scallen's third motion to amend was properly denied as untimely. <u>Frank v. U.S. West, Inc.</u>, 3 F.3d 1357, 1365-66 (10th Cir. 1993). Scallen's claim that the clock was effectively turned back to the denial of his second motion to amend is incorrect because Scallen did not expressly argue, in his original appeal, that the denial of his second motion to amend was error. Thus, he cannot now challenge that decision. <u>Tronzo v. Biomet, Inc.</u>, 236 F.3d 1342, 1347-49 (Fed. Cir. 2001).

Additionally, Scallen argues that the district court improperly dismissed as untimely his motion seeking a declaration that the University's commercial activities, i.e., its patent-related activities, were not immune under the New Mexico Tort Claims Act. Although raised in the form of a motion, Scallen's arguments are more appropriately viewed as challenging the district court's dismissal of his counterclaims as barred by the New Mexico Tort Claims Act. Scallen relies heavily on language in Genentech, Inc. v. Regents of the University of California, 143 F.3d 1446 (Fed. Cir. 1998), to support his claim that patent-related activities are commercial and not subject to sovereign immunity. Although Genentech hinted that such a proposition might be tenable in the context of state sovereign immunity under the Eleventh Amendment, Genentech did not decide the issue. Id. at 1453-54. Moreover, the case was subsequently vacated by the Supreme Court in view of its then-recently decided case College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666 (1999). Regents of the Univ. of Cal. v. Genentech, Inc., 527 U.S. 1031 (1999). In Florida Prepaid, the Supreme Court said,

> Nor do we think that the constitutionally grounded principle of state sovereign immunity is any less robust where, as here, the asserted basis for constructive waiver is conduct that the State realistically could choose to abandon, that is undertaken for profit, that is traditionally performed by private citizens and corporations, and that otherwise resembles the behavior of "market participants."

527 U.S. at 684. Although Florida Prepaid also involved immunity under the Eleventh Amendment, the quoted language undercuts any sliver of support Scallen may have derived from our language in Genentech. Scallen has not directed this court to any analogous waiver in the New Mexico Tort Claims Act, and we have found none.

Scallen also contends that in waiving its Eleventh Amendment immunity by filing suit in federal court, the University has waived all immunity, both state and federal, for all claims asserted by Scallen. We have already decided that the University waived Eleventh Amendment immunity only for compulsory counterclaims. Regents of the Univ. of N.M. v. Knight, 321 F.3d 1111, 1124-26 (Fed. Cir. 2003). That issue may not be relitigated now. To the extent that our prior decision has not disposed of this issue, waiver of Eleventh Amendment immunity does not, in and of itself, constitute waiver of the University's sovereign immunity under the New Mexico Tort Claims Act. Scallen also argues that NMSA § 41-4-21 constitutes a waiver of sovereign immunity in the New Mexico Tort Claims Act for employer-employee relationships and that his counterclaims fall within this exception. As the University points out, however, "[t]hat section was designed to preserve employment relations, not to provide a waiver of immunity." Rubio v. Carlsbad Mun. Sch. Dist., 744 P.2d 919, 922 (N.M. Ct. App. 1987).

Scallen argues that the University violated his First Amendment academic freedom rights by filing inaccurate and/or false documents with the Patent and Trademark Office. Scallen raises this claim for the first time on appeal. Although district courts have a duty to liberally construe pro se plaintiffs' pleadings, Haines v. Kerner, 404 U.S. 519 (1972), the record in this case evinces no denial or derogation of Scallen's First Amendment academic freedom rights.

Scallen argues that the appropriate statutes of limitations have not begun to run on any of his counterclaims because all of the wrongs involved in the counterclaims are continuing to this day. Scallen makes no effort, however, to support this assertion. Scallen points to no evidence suggesting that he should not have been aware of the

alleged wrongs identified in his counterclaims until after June 16, 1997, the date two years prior to his counterclaim filing date. See LaMure v. Peters, 924 P.2d 1379, 1383-84 (N.M. Ct. App. 1996) (looking to "the point at which the [claimants] knew or should have known that they were damaged" as the appropriate time to begin the statute of limitations period under a claim of continuing harm).

Scallen raises numerous arguments regarding the University's purported unwillingness to seek to profit from the technology at issue in this case and the University's purported obligation to return the rights to the technology to Scallen and Knight upon its decision not to seek to profit from the technology. All of these arguments are based on allegations of breach of contract, impracticability, or fraud stemming from a failure to perform contractual duties. As the University properly points out, however, Scallen raised none of these issues in his pending counterclaims. Moreover, as the University also properly points out, these entirely new claims were first raised on December 1, 2003 in the form of a motion, after our remand to consider which counterclaims were compulsory. Thus, the district court's dismissal of Scallen's "motion" as untimely was proper.

Scallen argues that the district court abused its discretion in awarding costs against him where the University engaged in litigation misconduct and that the district court improperly awarded $4,256.99 in costs that were not authorized. The University responds that Scallen did not timely raise the litigation misconduct issue and thus has waived it and that the $4,256.99 in costs associated with the special master were authorized. The University is correct that Scallen has shown no abuse of discretion in the district court's failure to deny costs to the University where Scallen failed to timely

raise an argument against such an award. Moreover, the Order of Reference and Amended Order of Reference of the district court cannot be construed as disallowing any fees of the special master after the due date for the specified reports, especially where the district court tasked the special master with preparing an additional document.

Finally, Scallen argues that Judge Conway should be recused under 28 U.S.C. § 455(a) because of alleged prejudicial conduct toward Scallen and Knight. Scallen's contention that Judge Conway showed prejudice is wholly without merit. Although Knight filed a motion before the district court addressing this issue, Scallen did not join that motion, and he cannot now object to its denial. Correge v. Murphy, 705 F.2d 1326, 1331 (Fed. Cir. 1983). Moreover, merely failing to rule in a litigant's favor on disputed issues of law does not raise a reasonable question as to a Judge's impartiality. See Caravalho v. Pugh, 177 F.3d 1177, 1178-79 (10th Cir. 1999) ("[M]ere disagreement with the merits of a district court decision, which decision was clearly correct, does not support recusal of the judge.").

## B. Knight's Arguments

Knight initially raises numerous arguments alleging fraud on the Patent and Trademark Office by the University. Although the argument is not entirely clear, Knight appears to be arguing, among other things, that the University fraudulently amended its United States patent applications so that a different inventor could claim what he and Scallen actually invented. Knight makes numerous additional allegations related to the University's alleged complicity in supposedly allowing its licensee to claim credit for what Scallen and Knight actually invented, but Knight never explains how any of this

relates to the current appeal. As noted above, Knight's counterclaims were dismissed for being: (1) not compulsory, (2) barred by relevant statutes of limitations and the New Mexico Tort Claims Act, and (3) in the case of his claim for royalties, unproven. Knight's allegations, even if true, do not show any error in the district court's decisions on these issues.

With respect to Knight's royalties claim in particular, the district court granted summary judgment in favor of the University dismissing the claim due to Knight's lack of evidence. Regents of the Univ. of N.M. v. Knight, No. CIV 99-577 (D.N.M. Jan. 8, 2004) (Mem. Op. & Order). In granting summary judgment, the district court noted that the University argued that it did not owe Knight royalties until the patents produced a net income, which the University asserted had not yet occurred. Id. The district court held that Knight had not raised a material issue of fact challenging these assertions, stating, "Instead, Knight's Response contains multiple amorphous and illogical arguments that do not pertain to the issue of royalties." Id., slip op. at 6. Knight has not directed this court to any evidence that a material issue of fact existed precluding summary judgment or that the district court incorrectly applied the law in reaching its decision.

Knight also alleges numerous improprieties by the district court, including appointing a special master who taught at the University, concealing the fact that the special master taught at the University, allowing the University's licensee to receive Knight and Scallen's confidential information, and refusing to consider timely pleadings regarding recusal of Judge Conway. All of these issues except that relating to recusal of Judge Conway arose prior to Knight's last appeal and cannot be raised now. Tronzo v. Biomet, Inc., 236 F.3d 1342, 1347-49 (Fed. Cir. 2001). With respect to recusal of

Judge Conway, Knight presents no substantive argument as to why Judge Conway's refusal to recuse himself constituted error.

Finally, Knight argues that a continuing wrong precludes a statute of limitations and a Tort Claims Act defense. As evidence of such a "continuing wrong," Knight cites conduct occurring in September 1994 and a letter from the University to an attorney for Knight dated July 8, 1997. Knight does not explain to which of his counterclaims this evidence purportedly relates, nor does Knight explain how merely restating the University's position in the July 1997 letter constitutes a "continuing wrong" sufficient to toll a statute of limitations under New Mexico law. Knight also argues that the University's failure to timely respond to his letter in 1998 after stating that it would "respond shortly" somehow makes his counterclaim within the statute of limitations. The district court found, however, that Knight's claim for slander of inventorship— presumably the cause of action to which Knight is referring—arose in 1995. Regents of the Univ. of N.M. v. Knight, CIV 99-577, slip op. at 11 (D.N.M. June 18, 2003) (Mem. Op. & Order). Thus, when Knight wrote the letter in 1998, the two-year statute of limitations had already run, and the letter could not have tolled the statute of limitations. Similarly, Knight's allegation that the University unlawfully changed inventorship in August 1995, even if true, could not make his counterclaim timely because his initial counterclaim was filed June 9, 1999. Knight has not demonstrated any error in the district court's decision.

CONCLUSION

For the above reasons, Scallen and Knight's arguments presented on appeal are without merit. Thus, we affirm the district court's dismissal of Scallen and Knight's counterclaims and award of costs.